IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATHEWS T. MATHEWS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KATHLEEN HERMANN, et al., | : | |
| | : | |
| Defendants. | : | NO. 07-01318 |

## MEMORANDUM AND ORDER

**L. Felipe Restrepo**
**United States Magistrate Judge**                                      **April 30, 2008**

Plaintiff Mathews T. Mathews ("Plaintiff") brings this action against Defendants AirTran Airways, Inc. ("AirTran") and Kathleen Hermann, individually, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") (Count II), Sections 1981, 1985, and 1988 the Civil Rights Act of 1870, as amended, 42 U.S.C. § 1981, § 1985, § 1988 (Count III), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq. ("PHRA") (Count V).  Plaintiff also brings state law claims, including defamation, invasion of privacy, breach of express and implied contract, tortuous interference with a business relationship, and intentional infliction of emotional distress (Count IV).  Now before the Court is Defendants' Motion for Summary Judgment (Doc. No. 25) pursuant to Fed. R. Civ. P. 56. Because the Court finds that the bulk of Plaintiff's claims are time-barred, and because Plaintiff has failed to present sufficient evidence to create a question of material fact with regard to any of his claims, the Motion will be granted on all Counts.

I.   <u>BACKGROUND</u>

The relevant, undisputed facts as set forth in the parties' filings and at oral argument (Doc. Nos. 1, 17, 24-31, Defendants' Exhibits A-Z, and Plaintiff Mathews T. Mathews' Exhibits (unmarked)) are as follows:

1.  Plaintiff Mathews T. Mathews is an individual of "Indian ancestry." (Compl. ¶ 37.)

2.  On March 30, 2001, Plaintiff applied for employment with AirTran.  (<u>See</u> Def. Ex. A.)  In April 2001, he was hired as a Customer Service Agent at Philadelphia International Airport. (Compl. ¶ 12.)  AirTran's training records indicate that Plaintiff received initial training on AirTran policies and procedures, customer service skills, and gate and ticket counter procedures from April 16-27, 2001.  (<u>See</u> Def. Ex. B.)

3.  AirTran's records indicate that from October 29, 2002 to July 6, 2004, Plaintiff was periodically disciplined for "failure to follow instructions or comply with rules," "violation of policy/procedure," and "carelessness."  (<u>See</u> Def. Ex. F.)  Plaintiff also received numerous commendations for work well done.  (<u>See</u> Compl. ¶¶ 14-18.)

4.  On August 12, 2004, Plaintiff was suspended from employment by his supervisor, Defendant Kathleen Hermann, pending an investigation into an incident in which several other employees observed Plaintiff attempting to check in a passenger who was not present at the ticket counter, "a violation of AirTran and Transportation Security Administration ("TSA") procedures."  (See

Def. Ex. G, H.)  Plaintiff was stopped by a supervisor, Linda Massington, who reported the incident to Ms. Hermann.  According to Ms. Hermann's report regarding the incident, Ms. Hermann confronted Plaintiff regarding the alleged violation of procedure and advised him that he was suspended, then sent Plaintiff home until further contact.  (See Ex. G, p. 2.)

5.  By letter dated August 17, 2004, the Philadelphia Station Manager, Christopher Brophy, informed Plaintiff that AirTran was terminating his employment effective the date of the letter because he had violated AirTran and TSA procedure.  (See Def. Ex. H.)  The letter also indicates that Plaintiff had been previously placed on a ninety-day probation on March 28, 2003 for failure to comply with the same procedure.  (See id.)

6.  Plaintiff indicated his intention to appeal his termination to a Peer Review Panel by letter dated August 22, 2004.  (See Def. Ex. I.)

6(a). Plaintiff's records indicate that he wrote several letters to AirTran's Vice Presidents for Human Resources and Customer Services after his suspension but ostensibly before his appeal was heard by the Peer Review Panel.  Only one of these letters (sent to Loral Blinde, Vice President of Human Resources, dated August 22, 2004) is included in Defendant's discovery; therefore, it is unclear whether Plaintiff ever actually sent any of the other letters. The letters include a slew of allegations of long-standing "bias" by Kathleen Hermann, particularly ongoing social ostracization (failing to wish Plaintiff Happy Holidays, failing to include him in her discussions during cigarette breaks) and an instance in January 2004 where Ms. Hermann

3

publicly discredited Plaintiff via a workplace message board for an accomplishment that was

credited to Plaintiff in AirTran's "Altitudes" magazine.[1]


7.  On October 22, 2004, Amy Morris, Manager of Employee Relations, sent Plaintiff a letter via

certified mail indicating the decision of the Appeal Board.  (See Def. Ex. J.)  The letter states:

> After thoroughly considering the information and facts presented by the Company
> and by you, the Board has decided to reinstate your employment.  While the Board
> did not necessarily believe your version of events, the Board did determine that
> the investigation did not sufficiently prove that termination was warranted.
> However, as the Board felt that you did not follow AirTran policy and procedure,
> the time off will be without pay.  Your seniority, however, will be retained."

The Philadelphia Station Manager, Christopher Brophy, recommended that Plaintiff be reinstated

despite his belief that Plaintiff had "violated AirTran and federal policies."  (See Def. Ex. L,

Brophy Aff. ¶ 4, 2/15/08.)


8.  The October 22, 2004 reinstatement letter also issues a "final warning" to Plaintiff, stating

that he is to follow all AirTran policies and procedures as set out both by AirTran, TSA, and the

Federal Aviation Administration.  The letter states, "failure on your part to follow these policies

and procedures may result in termination of your employment without rights to an additional

---

[1]  Plaintiff was featured in "Altitudes," AirTran's crew member newsletter, because he
allegedly helped a passenger secure seats on a flight for the passenger and his sick wife.
According to Plaintiff, after the article in "Altitudes" was circulated, Ms. Hermann posted a sign
on a workplace message board which stated that, despite Plaintiff having received credit in
"Altitudes" for securing the tickets, another employee (not Plaintiff) had actually assisted the
customer, and that the other employee actually deserved the credit.  (See Pl. Ex., Letters from
Mathews Mathews, 8/12/04, 8/14/04, 8/22/04, 9/14/04.)

appeal."

8(a).  On November 20, 2004, Plaintiff again wrote to Loral Blinde (though it is unclear whether he sent the letter) asking him to intervene on his behalf and award him pay during his suspension. On 11/8/04, Plaintiff's submitted records indicate that Plaintiff e-mailed Amy Morris to file a complaint of "intimidation" by Linda Massington because she stated that now that he was reinstated, "she will be very close on [his] heels."

9.  On January 2, 2005, Defendant Hermann resigned from AirTran.  (See Def. Ex. M, Hermann Aff. ¶ 2, 2/28/08.)

10.  In February 2005, Christopher Brophy conducted an investigation into "potential fraud and improper handling of AirTran revenue."  (Brophy Aff. ¶ 7.)  During this investigation, Mr. Brophy discovered that during the period of the 2005 Super Bowl, Plaintiff had transferred an AirTran customer from one flight to another without charging appropriate fees, in violation of AirTran's policy and express directives to its employees.  (See id. ¶ 6-9.)  "Because he was on a last chance agreement and had been warned that any future policy violations would result in termination," Mr. Brophy recommended that Mr. Mathews be terminated.  (Id. ¶ 10.)

11.  Plaintiff was terminated effective February 14, 2005 via certified letter on February 11, 2005.  (See Def. Ex. P.)  Plaintiff's subsequent appeal was denied.  (See Def. Ex. R.)

5

12.  On March 22, 2005, Plaintiff filed an administrative complaint with the Philadelphia

Commission on Human Relations alleging discrimination on the basis of national origin and

retaliation.  (See Def. Ex. S.)

13.  Plaintiff filed his Complaint against AirTran and Ms. Hermann with this Court on or around

April 3, 2007.  (See Compl., Doc. No. 1.)  Plaintiff did not perfect service on either Defendant,

and sought waivers of service on May 25, 2007.  (See Doc. No. 2.) Defendants agreed to waive

service (Doc. No. 5).

13(a).  In his Complaint (which is not pro se, but difficult to understand), Plaintiff claims he is in

"a protected class, Indian Ancestry . . . [P]laintiff was qualified for the position and performed

his responsibilities commendably; the defendant treated similarly situated coworkers better than

[] [P]laintiff in promotion opportunities, disparate discipline including retaliatory reprimands,

suspensions and terminations, retaliatory malicious and pretextual allegations by [D]efendant

Hermann to [] [P]laintiff's coworkers, and [] [P]laintiff suffered harm when he was ultimately

discharged by the defendants for pretextual reasons after [] [P]laintiff reported the retaliation and

unlawful behavior to the vice president of the defendant and senior human resources

representative, Mr. Loral Blinde."  See Compl. ¶ 37.

14.  Defendants filed a motion to dismiss (Doc. No. 6), which was denied without opinion by

Senior Judge Marvin Katz on September 4, 2007.  (Doc No. 14.)

6

15.   During his November 13, 2007 deposition, Plaintiff alleged the following acts he felt to be discriminatory (in addition to his suspension, termination, and subsequent termination):

    A.    He was denied bereavement leave and had to take leave without pay in November 2001 when his mother-in-law passed away.  (Mathews Dep. at 112-13.)

    B.    An incident in March 2003 when Ms. Hermann opened mail addressed to him at AirTran's address regarding a money clip held for a passenger.  (Id. at 107-09.)

    C.    In 2002 or 2003, Ms. Hermann denied him the opportunity to attend training.  (Id. at 116.)

    D.    Plaintiff applied for a supervisory position in 2003, but was not selected.  Plaintiff notes that this was the only time he applied for a promotion.  (Id. at 117-18; see also Def. Ex. T, Plaintiff's Res. To Interrogatories, at 2.)

    E.    At the time of his hire in 2001, he was paid less than other recently-hired employees, but that discrepancy was corrected in 2001.  (Mathews Dep. at 32-33.)

16.  Plaintiff's answers to Defendants' Interrogatories, (see Def. Ex. T-U), allege various other incidents of which Plaintiff disapproved from 2001-July 11, 2004.

17.  On or around February 18, 2008, Defendants submitted a motion for summary judgment and supporting brief.  (Doc. Nos. 24-25.)  Plaintiff responded on or around February 25, 2008 (Doc. Nos. 26-28.), and Defendants replied on March 4, 2008.  (Doc. No. 29.)

18.  Oral argument on Defendants' pending summary judgment motion was held on March 6,

2008.  (See Doc. No. 30, 33.)  During oral argument, the Court requested that Plaintiff submit a supplemental brief, which was filed by Plaintiff on March 11, 2008.  (Doc. No. 31.)  Trial in this matter was suspended pending the disposition of the pending Motion for Summary Judgment.

## II.   LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the court must determine "whether there is a genuine issue of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inference in that party's favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Akarimali v. Nw. Human Serv., 2007 U.S. Dist. LEXIS 2981, *9 (E.D. Pa. Jan. 11, 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The party moving for summary judgment bears the initial burden of showing the basis for its motion.  See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  If the movant meets that burden, then the onus shifts to the non-moving party to "set forth specific facts showing the existence of [a genuine issue of material fact] for trial.[2]  Akarimali, 2007 U.S. Dist. LEXIS 2981,

---

[2]  Discovery closed in this matter on January 18, 2008.  Based on the evidence Plaintiff submitted in support of his Response to Defendants' Motion for Summary Judgment (Doc. No. 28) and the assertions of counsel at oral argument, it appears that he never deposed any of

at *9 (quoting <u>Shields</u>, 254 F.3d at 481).

III.   <u>ANALYSIS</u>

**A.   COUNTS I and V: TITLE VII and PHRA**

Counts I and V of the Complaint allege national origin discrimination[3] under Title VII

and the PHRA.  <u>See</u> Compl. Counts I, V.[4]  The sum of both the pleadings and Plaintiff's

assertions at oral argument indicate that Plaintiff alleges disparate treatment, hostile work

environment[5], and retaliation because of his "Indian Ancestry."  <u>See</u> Compl. ¶¶ 9, 37-38, 56-57;

---

Defendant AirTran's employees, nor Defendant Hermann.  Plaintiff thus relies heavily on his
own deposition, conducted by defense counsel, to show specific facts to rebut Defendants'
motion.

[3]  Plaintiff's Complaint does not explicitly set forth to which protected class under Title
VII and the PHRA he claims he belongs.  Plaintiff states that he is claiming "Ethnic
discrimination (Indian)," or discrimination based on his "Indian Ancestry," which could
reasonably be interpreted as discrimination based either on race, national origin, or race/national
origin. <u>See</u> Compl. ¶¶ 8, 37.  However, because Plaintiff checked only "national origin" on his
administrative complaint (and "disability," <u>see</u> <u>infra</u>, n.2), the Court will treat his claims of
discrimination as national origin-based.  <u>See</u> Def. Ex. S; <u>see also</u> <u>29 C.F.R. § 1606.1</u> (EEOC
Guidelines Definition of national origin discrimination).  The Court also notes that Defendants
concede that Plaintiff is in a protected class.  <u>See</u> Tr. Summ. J. Oral Arg., 3/6/08, 37:21-25.

[4]  In his Complaint, Plaintiff alleged discrimination on the basis of his alleged disability
under Title VII.  At oral argument, Plaintiff conceded that disability is not a protected trait under
Title VII.  <u>See</u> Tr. Oral Arg. 5:12-25; <u>42 U.S.C. § 2000e-2</u>; <u>Gurmankin v. Costanzo</u>, 626 F.2d
1115, 1127 (3d Cir. 1980).
        Plaintiff also originally sought to hold Defendant Hermann individually liable under Title
VII.  Subsequently, plaintiff conceded that individual employees may not be held individually
liable under Title VII.  <u>See</u> Tr. Oral Arg. 6:13-15; <u>Barron v. Saint Joseph's Univ.</u>, 2002 U.S.
Dist. LEXIS 12286, at *12 (E.D. Pa. Jan. 17, 2002) (citing <u>Sheridan v. E.I. Dupont de Nemours</u>
<u>& Co.</u>, 100 F.3d 1061 (3d Cir. 1996) ("Individual employees . . . cannot be liable under Title
VII.").  Accordingly, summary judgment is granted to Defendants on the afore-mentioned claims.

[5]  Because Plaintiff's only allusion to a hostile work environment claim in the Complaint
is the words "hostile environment" in paragraph 9 under the portion of the Complaint addressing

Tr. Oral Arg. 9:12.  Because Title VII and the PHRA share the same framework of evaluation,

see 43 Pa. Cons. Stat. § 955(a); see also Clinkscales v. The Children's Hosp. Of Phila., 2007

U.S. Dist. LEXIS 83930, at *12 (E.D. Pa. Nov. 9, 2007) ("The PHRA . . . is construed

consistently with Title VII.") , the Court will address Counts I and V together.

### 1.   Applicable Statutes of Limitations

Defendants raise the Title VII and PHRA statutes of limitations as affirmative defenses to

Plaintiff's claims.  See Def. Br. Summ. J. 9-11, 45 (Doc. No. 25).  Defendants argue that because

Plaintiff filed his administrative claim with the Philadelphia Commission on Human Rights

("PCHR") on or around March 22, 2005, Plaintiff is barred from raising any claims based on

events that occurred before July 16, 2004 under Title VII.  Because Plaintiff filed his complaint

under the Philadelphia Fair Practice Ordinance (which serves as the filing date of his

administrative complaint under the PHRA[6]) on April 12, 2005, Defendants argue that Plaintiff is

barred from raising any claims based on events that occurred before October 14, 2004 under the

PHRA.

In order to determine which events Plaintiff may rely on to support his Title VII and

PHRA claims, the Court must review the various statutes of limitations which apply to his

---

jurisdiction and venue, but is not mentioned under Counts I (Title VII) or Count V (PHRA), the
Court questions whether this claim was adequately pled.  However, in light of Fed. R. Civ. P.
8(d)(1) and 8(e), the Court will proceed as if hostile work environment under the statutes has
been properly pled.

[6]  See Kedra v. Nazareth Hosp., 857 F. Supp. 430 (E.D. Pa. 1994) (predicting that the
Pennsylvania Supreme Court would hold that filing with the PCHR constitutes compliance with
the PHRA because of the PCHR's statutory obligation to notify the Pennsylvania Human Rights
Commission of complaints filed with them).

claims.

As a prerequisite to filing suit in federal court under Title VII, a plaintiff must file a

charge with the EEOC within 180 days after the alleged unlawful employment practice occurred,

or, if the claims are filed with a state or local agency with authority to grant or seek relief from

such practice, then the claims must be filed with the EEOC within 300 days after the alleged

unlawful employment practice occurred.  See Boyer v. United Steel Workers of Am., Local

1165-02, 2005 U.S. Dist. LEXIS 171, at *5-5 (E.D. Pa. Jan. 7, 2005) (citing 42 U.S.C. § 2000e-

5(e)(1)).  Since Pennsylvania is such a deferral state, federal charges must be filed with the

EEOC within 300 days of the alleged discrimination.  Id. at *6 (citing Gerhart v. Boyertown Area

Sch. Dist., 2002 U.S. Dist. LEXIS 11935, at *10 (E.D. Pa. Mar. 5, 2002)).  Claims filed under

the PHRA must be filed with the Pennsylvania Human Rights Commission ("PHRC") (or in this

instance, the PCHR) within 180 days after the alleged act of discrimination.  43 Pa. Cons. Stat. §

959(h).

Plaintiff filed his charge of discrimination with the PCHR on or about March 22, 2005.

To prevail on his Title VII claims, Plaintiff may only point to alleged discriminatory acts which

occurred on or after July 16, 2004, 300 days before he filed his charge of discrimination.  See

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110-15 (2002) (holding that

discrete discriminatory acts occurring prior to the Title VII limitations period are not actionable).

Under the PHRA, he may only rely on events that occurred on or after October 14, 2004, 180

days before his administrative filing. With regard to Plaintiff's claim of pay disparity in 2001,

that claim is clearly barred by the statutes of limitations as a result of the Supreme Court's recent

decision in Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162 (2007) (holding that a pay

decision is a discrete act triggering the statute of limitations).

Plaintiff does not contest the filing dates or applicable statutes of limitations, but instead invokes equitable tolling and the "continuing violation" theory, arguing that the events that occurred before the tolling of the statutes of limitations should not be time-barred under these equitable doctrines.  The Court will address each of Plaintiff's arguments in turn.

(a)    Equitable Tolling

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed."  Oshiver v. Levin, 38 F.3d 1380, 1387 (3d Cir. 1994). Plaintiff raised the issue of equitable tolling for the **first time** during oral argument on the summary judgment motion.  See, e.g., Tr. Oral Arg. 46.  The Court does not find equitable tolling warranted in this case.

Courts may equitably toll the statute of limitations only when the "principles of equity would make the rigid application of a limitation period unfair."  Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Estrada v. Trager, 2002 U.S. Dist. LEXIS 17342, at *18-19 (E.D. Pa. Sept. 10, 2002).  Equitable tolling is to be sparingly applied so as to respect the integrity of statutes of limitations.  See Estrada, 2002 U.S. Dist. LEXIS at *19 (citing Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999)).

It may be proper to equitably toll a statute of limitations where: (1) a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.  See, e.g., Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000); New Castle County v. Halliburton NUS Corp.,

12

111 F.3d 1116, 1125-26 (3d Cir. 1997) (quoting <u>Oshiver</u>, 38 F.3d at 1387).

The pleadings at issue contain "no allegation or inference that Plaintiff in some extraordinary way was prevented from asserting her rights, or mistakenly asserted her rights in the wrong forum."  <u>See</u> <u>Harper v. Court of Common Pleas of Phila.</u>, 2000 U.S. Dist. LEXIS 7252, at *8-9 (E.D. Pa. May 26, 2000).  Rather, Plaintiff seems to argue that AirTran actively misled him respecting his cause of action by offering the peer review process after his first termination in August 2004, purposefully causing Plaintiff to rely on the process to resolve his claims of discrimination, and hence delaying him from filing a charge with the EEOC and PCHR.  <u>See</u> Tr. Oral Arg. 87.

Under this theory, Plaintiff's non-compliance with the statute of limitations warrants equitable tolling only if "an employer's active deception of an employee concerning the reason for an employment action, which deception causes the employee to be lulled into foregoing prompt vindication of her rights." <u>Harper</u>, 2000 U.S. Dist. LEXIS at *9 (quoting <u>Haines v. Township of Voorhees</u>, 1997 U.S. Dist. LEXIS 18132, at *7 (D.N.J. Nov. 10, 1997)).  Further, Plaintiff must also show that "due to Defendants' deception, [he] could not, through the exercise of reasonable diligence, discover essential information bearing on [his] claim."  <u>Id.</u>

Even viewing all submitted evidence in a light most favorable to Plaintiff, there is nothing in the record to indicate that AirTran deceived Plaintiff regarding the reasons for his suspension, termination, subsequent reinstatement, and final termination.  Nothing in the record indicates that AirTran's rationale for their employment actions as set forth in Christopher Brophy and Ann Morris' letters to Plaintiff–namely, his violation of AirTran and federal aviation procedures–were mere deception.  There is also no evidence that Plaintiff could not have

discovered essential information regarding his claim because of his use of the peer review process or as a result of AirTran's communications with him regarding his employment.

As proof that equitable tolling is warranted by AirTran's actions, the Court has only the unsupported assertions by Plaintiff's counsel at oral argument that this Court might infer that AirTran deceived Plaintiff by offering the peer review process as a decoy to delay him from asserting his rights.  The Court does not find this to be sufficient evidence of record to persuade us that equitable tolling is warranted in this case.  Hence, Plaintiff's claims based on time-barred events have properly expired.

*(b)   Continuing Violation*

Plaintiff also invokes the "continuing violation" doctrine, arguing that events occurring before the tolling of the applicable statutes of limitations are actionable under a hostile work environment theory of liability.  See, e.g., Tr. Oral Arg. 8-23.

The continuing violation doctrine is an equitable exception to the timely filing requirement.  See Shahin v. Coll. Misericordia, 2006 U.S. Dist. LEXIS 65272, at *29 (M.D. Pa. Sept. 13, 2006) (citing West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)).  Plaintiff's argument hinges on his hostile work environment theory[7], see Tr. Oral Arg. 8-9, and requires aggregating the acts occurring outside the statute of limitations period (pre-July 16, 2004 (Title VII) and October 14, 2004 (PHRA)) with those that were timely raised.  Defendants respond by arguing that Plaintiff points only to discrete acts of alleged discrimination–namely, his

---

[7]  At oral argument, Plaintiff conceded that the Title VII and PHRA statutes of limitations bar him from pointing to adverse employment actions which occurred on or before July 16, 2004 and October 14, 2004, respectively, with regard to his claim of disparate treatment.  See Tr. Oral Arg. 11:24-25.

suspension, his terminations, failures to promote, etc.–which, individually, trigger the applicable statutes of limitations.

The Supreme Court resolved this issue in <u>AMTRAK v. Morgan</u>, 536 U.S. 101 (2002), which established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim.  <u>See</u> <u>O'Connor v. Newark</u>, 440 F.3d 125, 127 (3d Cir. 2006). "The former must be raised within the applicable limitations period or they will not support a lawsuit." <u>Id.</u> (citing <u>Morgan</u>, 536 U.S. at 113.)  The latter can occur at any time so long as they are linked to a pattern of actions which continues into the applicable limitations period.  <u>Id.</u>

In <u>O'Connor v. Newark</u>, 440 F.3d 125 (3d Cir. 2006), the Third Circuit found that <u>Morgan</u>'s "precise guidance as to what sort of acts are discrete" pointed very specifically to the following, non-exhaustive list of actions: "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation."  440 F.3d at 127.

Applying the <u>Morgan</u> distinction to Plaintiff's allegations as listed above, <u>see</u> <u>supra</u> Part II, it is clear that all of them fall into the category of discrete acts.  Accordingly, they cannot be aggregated under a continuing violations theory.  As the Third Circuit states in <u>O'Connor</u>, "the 'hostile work environment' theory is designed specifically to address situations in which the plaintiff's claim is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant." 440 F.3d at 128.  To the extent Plaintiff's hostile work environment is based on such discrete actions which occurred outside the applicable limitations periods, it is barred.  "[T]ime barred claims cannot be resurrected by being aggregated and

15

labeled continuing violations." Id. at 129.

The Court will now turn to Plaintiff's specific claims under Title VII and the PHRA.

## 2.   Disparate Treatment

Plaintiff asserts a disparate treatment claim against AirTran under Title VII and the PHRA.  AirTran has moved for summary judgment on both claims.  In light of the applicable statutes of limitations, Plaintiff may only point to his August 2004 and February 2005 terminations with regard to his disparate treatment claim.[8]

In evaluating the validity of Plaintiff's disparate treatment claim under both Title VII and the PHRA, the Court must apply the now-familiar burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 1003); Boyer, 2005 U.S. Dist. LEXIS *16 n.6 ("The McDonnell Douglas framework applies equally to Title VII [and the] PHRA.").

Under the McDonnell Douglas framework, Plaintiff carries the initial burden of proving a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To establish a prima facie case, a plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) the circumstances of the adverse employment action create an inference of discrimination.  Sarullo, 352 F.3d at 797 (citing McDonnell Douglas, 411 U.S. at 802).  This

---

[8] In fact, Plaintiff may only rely on his February 2005 termination, because his reinstatement after his August 2004 termination means that he can no longer claim it as an adverse employment action.  See Sarko v. Henderson, 2004 U.S. Dist. LEXIS 22194, at *8 (E.D. Pa. Oct. 29, 2004.)  However, for the sake of the parties, the Court will address the August 2004 termination as a viable part of Plaintiff's claim in order to assure the parties that, irregardless of reinstatement, the August 2004 termination does not require any legal remedy.

prima facie case must be "tailored to fit the specific context in which it is applied." Id. at 797-98.

If a plaintiff is able to establish a prima facie case, the burden of production (but not persuasion) shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802.  However, the employer does not need to show that it was actually motivated by its proffered reason, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993), because the "ultimate burden of proving intentional discrimination always rests with the plaintiff."  Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

Once the employer meets this "relatively light burden," the "burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual."  Boyer, 2005 U.S. Dist. LEXIS at *17-18 (quoting Fuentes, 32 F.3d at 763).  This burden can only be met by proving that the defendant's proffered reason is not the true reason for the decision, but is "merely pretext for [] discrimination."  Id. (quoting Velez v. QVC, Inc., 227 F. Supp. 2d 384, 408 (E.D. Pa. 2002).

To survive a motion for summary judgment, the plaintiff must "point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory motive was more likely than not a motivating or determinative cause of the employer's action."  Id. at *18 (quoting Fuentes, 32 F.3d at 764).  "It is not enough to show that an employer's decision was wrong; the issue is 'whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  Younge, 2002 U.S. Dist. LEXIS at *16-17

17

(quoting Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999)).

In order to establish a prima facie case of disparate treatment, a plaintiff must show that he "was a qualified member of protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." See McDonnell Douglas, 411 U.S. 792. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Summary judgment is appropriate if the plaintiff "fails to show the existence of a similarly situated employee, and no other evidence of discrimination is present." Id.

In his Complaint, Plaintiff claims that "[D]efendant has never disparately treated, suspended, and/or fired a similarly situated non-Indian . . . for comparable grounds or for pretextual reasons, who also had a comparable commendable job performance, and who also had no prior disciplinary actions." See Compl. ¶ 38. However, Plaintiff has failed to back up this assertion with any evidence whatsoever. "In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges." See Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001). Plaintiff has not identified any non-Indian individual who was not terminated for violating the same AirTran, TSA, and FAA policy, nor any individual who was subsequently re-instated through the peer review process or given a "last-chance agreement." See Def. Br. 12-13. As a result, it is impossible for the Court to undertake the comparison necessary to make a prima facie finding of

18

disparate treatment.

Even assuming <u>arguendo</u> that Plaintiff established a prima facie case of discrimination, AirTran has come forward with a legitimate, non-discriminatory reason for terminating him. Specifically, AirTran has presented evidence that it terminated Plaintiff because it discovered, after investigation, that he had violated an AirTran and federal aviation policy by checking in a passenger who was not present, a violation for which Plaintiff appears to have been suspended previously. After reinstating Plaintiff despite "believing he had violated" the policy, Plaintiff was again terminated after violating his "last chance agreement," which stipulated that he could be terminated for any subsequent violations, because AirTran discovered that he failed to comply with AirTran's policy regarding flights to the Super Bowl.

In order for Plaintiff to demonstrate pretext, he must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." <u>See</u> <u>Akarimali v. Nw. Human Serv.</u>, 2007 U.S. Dist. LEXIS 2981, at *12 (E.D. Pa. Jan. 11, 2007) (citing <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 467 (3d Cir. 2005)). In Plaintiff's letters to AirTran's management and in his Complaint, Plaintiff seems to allege that his supervisors were mistaken regarding whether he checked in the passenger at issue. (<u>See</u> Pl. Exs.; Compl. ¶ 33.) However, "[i]n order to avoid summary judgment . . . more than mere allegations are required." <u>See</u> <u>Akarimali</u>, 2007 U.S. Dist. LEXIS at *13 (citing <u>Port Auth. Of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir. 2002)). Plaintiff must point to some evidence of record that would allow a reasonable fact-finder to conclude that AirTran falsified its reason for terminating him because of animus based on his national origin. <u>See</u> <u>id.</u> Plaintiff has blankly failed to do so, and thus failed to meet his burden of persuasion. Hence, summary judgment is appropriately

granted on Plaintiff's disparate treatment claim.

### 3.    Hostile Work Environment

An employer may be liable for discrimination under Title VII and the PHRA if an employee is subjected to a hostile work environment.  See Boyer, 2005 U.S. Dist. LEXIS at *41 n.17 ("The analysis of whether a hostile work environment exists is the same under Title VII [and] the PHRA.").  A hostile work environment exists when the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." AMTRAK v. Morgan, 536 U.S. 101, 115 (2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

In order to prevail under a theory of hostile work environment, a plaintiff must show that: (1) he suffered intentional discrimination because of his membership in a protected class; (2) the discrimination was regular and pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in his position who is in the same protected class; and (5) there is a basis for employer liability.  Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996)).

When evaluating the validity of a plaintiff's hostile work environment claim, a court must evaluate all of the circumstances surrounding the alleged harassment.  Id. at 261.  A court must judge circumstances such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001).  A court must also evaluate each work environment individually, "pay[ing] careful consideration [to] the social context in which particular behavior occurs and is experienced by its target." Boyer, 2005 U.S. Dist. LEXIS at *44 n.18 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).

First, as noted above, nearly all of the instances on which Plaintiff seeks to base his hostile work environment claim are barred by the applicable statutes of limitations and AMTRAK v. Morgan.  See supra.  However, the Court will briefly address Plaintiff's claim to the extent it is based on the alleged instances of ostracization by Ms. Hermann.  In sum, Plaintiff claims that he was not included in Ms. Hermann's "smoking and gossiping" breaks, and that, on occasion, she did not greet him or speak to him in the same cordial manner she took with other employees.

The first factor of the test for hostile work environment (intentional discrimination because of his or her membership in a protected class) "concretely expresses the principle that Title VII is not 'a general civility code for the American workplace.'" Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006), implied overruling on other grounds recognized by Moore v. City of Phila., 461 F.3d 331 (3d Cir. 2006) (quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80-81 (1998)).  "Many may suffer pervasive harassment at work, but if the reason for that harassment is not proscribed by Title VII, it follows that Title VII provides no relief." Id.

Considering the evidence in the aggregate, Plaintiff has failed to establish that he suffered intentional discrimination based on his national origin.  Plaintiff does not allege that Ms. Hermann, nor any other employee, ever made a negative comment to Plaintiff about his national

21

origin.[9]  Moreover, Plaintiff's afore-mentioned letters do not allege discriminatory animus based on national origin, but merely that actions were being taken that were unfair towards him personally.

Although a court must "be watchful for veiled discriminatory animus, a plaintiff must produce some evidence indicating that facially neutral actions were motivated by discriminatory animus."  See Shahin, 2006 U.S. Dist. LEXIS at *40-41 (citing Wheeler v. Voicestream Wireless Serv., 2005 U.S. Dist. LEXIS 43525 (M.D. Pa. May 24, 2005) ("Plaintiff may establish a hostile work environment claim by presenting evidence of overt discrimination, or by presenting evidence of both facially neutral mistreatment from which discriminatory animus may be inferred **and** overt discrimination.") (emphasis added)).  Plaintiff has simply not identified any evidence to support such an inference here.  Accordingly, the Court grants summary judgment to Defendants on Plaintiff's claim of hostile work environment.

**4.    Retaliation**

Plaintiff's final claim under Title VII and the PHRA is that AirTran retaliated against him by terminating him in February 2005 after he utilized the peer review process to secure his reinstatement and complain about his alleged harassment, and because of his letters of complaint to Mr. Loral Blinde.

A retaliation claim under Title VII is analyzed under a burden shifting framework similar to the McDonnell Douglas scheme utilized for disparate treatment claims.  See Shahin, 2006

_____

[9]  See Mathews Dep. at 162:3-7 ("Q: Was there any offensive language used, swear words,or inappropriate language based upon national origin or disability?  A: I don't remember anything . . .")

U.S. Dist. LEXIS at *51.  Under this framework, the plaintiff presents a prima facie case of retaliation by showing: (1) the employee engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action after or contemporaneously with the employee's protected activity; (3) a causal link exists between the employee's protected activity and the employer's adverse action.  Id. at *52 (citing Moore v. City of Phila., 461 F.3d 331 (3d Cir. 2006)).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  See Delli Santi v. CNA Ins. Companies, 88 F.3d 192, 199 (3d Cir. 1996).  If the defendant satisfies this requirement, then the burden of production shifts back to the plaintiff, who must show by a preponderance of the evidence that the reasons proffered by the defendant were only pretext for retaliation.  Id.

However, even if Plaintiff were able to make out a prima facie case of retaliation, he fails to rebut AirTran's proffered non-discriminatory, legitimate reason for terminating him, namely that he violated AirTran policy and his own terms of reinstatement with regard to the transfers of the Super Bowl flights.  Because Plaintiff fails to rebut AirTran's proffered nondiscriminatory reason for terminating him under his "last chance" agreement, see supra, summary judgment is appropriately granted to AirTran on Plaintiff's retaliation claim.[10]

---

[10]  Defendants argue that Plaintiff cannot prove his prima facie case because he cannot establish that he engaged in protected activity, nor can he prove that his letter to Mr. Loral Blinde resulted in his second termination.  See Def. Br. In Supp. Mot. Summ. J. 13-15.  Because Plaintiff's letters do not include any allegations of discrimination based on national origin or any other protected class under Title VII, and because there is no evidence that Mr. Brophy knew about Plaintiff's letters (Ms. Hermann having left AirTran at that point), the Court agrees.  However, it is not necessary to undertake an examination of Plaintiff's prima facie case, because

**B.   COUNT II: ADA and PHRA**

Plaintiff's second and fifth counts allege disability discrimination under the ADA, 42 U.S.C. § 12101 et seq., and the PHRA, 43 Pa. Cons. Stat. 955(a).  See Compl. Counts II[11] and V. The PHRA's prohibition against disability discrimination is construed in accordance with the ADA, see 43 Pa. Cons. Stat. § 955(a); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 n.6 (3d Cir. 2004) ("an analysis of an ADA claim applies equally to a PHRA claim.") (internal citations omitted.); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); therefore, the Court will address both disability claims together.

As a threshold matter, the ADA's statute of limitations and filing requirements incorporate those of Title VII (and the PHRA); therefore, Plaintiff is limited to those events which occurred on or after July 16, 2004 and (with regard to a disability claim under the PHRA) October 14, 2004.  See 42 U.S.C. § 12117(a), § 2000e-5; see also Davidson v. Am. Online, Inc., 337 F.3d 1179, 1183 (10th Cir. 2003).

To show a prima facie case under the ADA, a plaintiff must show (1) that he is disabled within the meaning of the statute; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation by the employer; and (3) he suffered an adverse employment action.  See Kelly v. Ret. Pension Plan, Provident Mut., 209 F. Supp. 2d 462, 474

---

he fails to rebut AirTran's proffered reason for his termination.

[11]  In his original Complaint, Plaintiff sought to hold Defendant Hermann individually liable under the ADA.  See Compl. Count II.  Because the ADA has not been interpreted to permit individual liability, summary judgment is granted to Defendants.  See Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) ("individuals are not liable under Titles I and II of the ADA.").

(E.D. Pa. 2002) (citing <u>Shaner v. Synthes</u>, 204 F.3d 494, 500 (3d Cir. 2000)).

On May 8, 2002, Plaintiff underwent a hip replacement.  <u>See</u> Def. Ex. D, Letter from Richard Rothman, M.D., 6/27/2002.  He was released to return to work full time as of June 24, 2002, with some restrictions on his movement.  <u>See id.</u>  In the fall of 2004, Plaintiff lost his right eye following complications of a previous cataract surgery, and received a prosthetic eye.  <u>See</u> Def. Ex. K, Letter from Steven Siepser, M.D., 11/2/04.

Defendants argue that Plaintiff cannot satisfy factor one of the test (that he is disabled within the meaning of the statute) because Plaintiff testified that none of his impairments interfere with a major life activity, and, in the case of his hip replacement, his disability related to the surgery was temporary.  <u>See</u> Def. Br. at 22-27 (citing Mathews Dep. at 50-51, 162-64, 171).  At oral argument, Plaintiff conceded that he was not disabled within the meaning of the ADA, but asserted that his claim was rather a "regarded as disabled" claim under the ADA.  <u>See</u> Tr. Oral Arg. 73-74.

<u>42 U.S.C. § 12102(2)</u> provides that an individual is disabled within the meaning of the ADA if he is "regarded as disabled."  For Plaintiff to be disabled under the "regarded as" portion of the ADA's definition of disability, he must demonstrate that he has a non-limiting impairment that his employer mistakenly believed limits major life activities.  <u>See</u> <u>Kelly</u>, 209 F. Supp. 2d at 475 (citing <u>Tice v. Centre Area Transp. Auth.</u>, 247 F.3d 506, 515 (3d Cir. 2001).

Specifically, Plaintiff alleges that he "was treated disparately in March of 2003, when the defendant Kathleen Hermann confronted [] [P]laintiff about his dual disabilities –[] [P]laintiff['s] loss of vision in his right eye in 1996, and the subsequent steroidal treatment of [] [P]laintiff's eye caused the deterioration of [P]laintiff's hip requiring leave to have a complete hip

replacement surgery performed, and placed illegal and humiliating [sic] on [P]laintiff alone because of defendant Hermann and defendant AirTran's wrongful and illegal perception that [P]laintiff could not perform the essential function of his position despite [his] stellar job accomplishments."  Compl. ¶ 19.

From what the Court can discern, this passage refers to an incident that allegedly occurred on March 18, 2003, when Plaintiff sought a catering position in lieu of his customer service position because he wished to have Sundays and Mondays off for church activities.  See Pl. Ans. to Def. Hermann's First Set of Interrogatories, at 1.  Ms. Hermann allegedly instructed two other supervisors to ask Plaintiff to sign a document affirming that he was aware of the duties of the catering job for which he bid, and that in so doing, he agreed that he is physically capable of re-stocking and catering the aircraft, removing and disposing of trash, and re-stocking the aircrafts' beer and liquor supplies.  Plaintiff alleges that Ms. Hermann also called him and said he might have to go for a medical examination to confirm that he could do the catering job.  Id.; Tr. Oral Arg. 72-77, 79-81.

Plaintiff claims that Ms. Hermann asked him to sign the document because she perceived him as disabled, and that the process of signing the document embarrassed him.  Defendant argues that Ms. Hermann did so because of the June 27, 2002 doctor's letter which AirTran received at Plaintiff's request, which indicates that Plaintiff's doctor had prohibited him from prolonged sitting and standing, bending and twisting, heavy lifting, and climbing.  See Tr. Oral Arg. 76-77; see also Def. Ex. D.  Defendant further argues that nothing in the ADA prohibits an employer from asking an employee whether he or she can perform essential functions of a job. See Tr. Oral Arg. 76-77.  In support, Defendants cite Cade v. Consol. Rail Corp., 2002 U.S. Dist.

26

LEXIS 8131 (E.D. Pa. May 7, 2002).[12]  See id. 81:24-25.

As a threshold matter, because this alleged incident took place in March 2003, it is wholly

barred by the statute of limitations. While Plaintiff attempts to extend his "continuing violation"

argument under Title VII to the context of his ADA claim, Plaintiff merely alleges one incident

of "regarded as" discrimination.  As previously discussed, "isolated, intermittent acts of

discrimination," West, 45 F.3d at 755, are not "susceptible to a continuing violation analysis."

Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-84 (3d Cir. 1997).  Plaintiff's ADA claim

is similarly ineligible for equitable tolling because there is no evidence that Plaintiff was unable

to discover key information related to this incident because of AirTran's deliberate and malicious

actions.  See supra.  Hence, the Court grants summary judgment to Defendants on Plaintiff's

ADA claim because it has expired.

Even if Plaintiff's claim were timely, it would warrant no relief.  Plaintiff cannot show

that he is in a protected class under the ADA based on Ms. Hermann's request for confirmation

that he could perform the essential functions of the catering job, because her request was related

to his physical fitness for only one job.  See Murphy v. United Parcel Serv., Inc., 527 U.S. 516,

522 (1999) ("To be regarded as substantially limited in the major life activity of working, one

must be regarded as precluded from **more than one particular job**.") (emphasis added); Sutton

v. United Airlines, Inc., 527 U.S. 471 (1999);  Kelly, 209 F. Supp. 2d at 475 (An "employer must

have perceived that his impairment substantially limited him in a major life activity, and not just

---

[12]  Despite Defendants citation, the Court does not rely on this case. In Cade, the Court
dismissed the plaintiff's ADA claim because she failed to exhaust her administrative remedies,
2002 U.S. Dist. LEXIS 8131, at *1-2, and proceeded solely on the plaintiff's claim under the
Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq.  Because Cade does not
ultimately address the statute at issue, we do not rely on it.

27

with respect to **one particular job**.") (emphasis added).   Ms. Hermann's indication that he

might have to undergo a medical examination before being deemed qualified for the catering job

is likewise insufficient. See Tice, 247 F.3d at 508-09 (concluding that an employer's request for a

medical examination is not sufficient to establish that the employer "regarded" the employee as

disabled).

To the extent that Plaintiff asserts a claim of retaliation under the ADA (i.e., that he was

terminated because he was "regarded as" disabled), the burden shifting scheme regarding a

legitimate, non-discriminatory reason for the adverse employment action and pretext under the

ADA is identical to that of Title VII.  See Kelly, 209 F. Supp. 2d at 475-76.  As with regard to

his Title VII claim, Plaintiff cannot rebut AirTran's legitimate, non-discriminatory reason for

terminating him under the ADA because he has pointed to no evidence to support a claim that his

terminations were pretext for disability discrimination.  Hence, summary judgment is awarded to

AirTran on Plaintiff's claims under the ADA and PHRA.

## C.   COUNT III: SECTIONS 1981, 1985, and 1988

Plaintiff also claims violations of 42 U.S.C. §§ 1981, 1985, and 1988.  See Compl. Count

III.  The Court will address each in turn.

### 1.   Section 1981

In Count III of the Complaint, Plaintiff states that he "was an employee of Indian

Ancestry who was entitled to the same benefits of the terms, conditions, and privileges of his

employment like non-Indian employees of the defendant," see Compl. ¶ 48, and that AirTran

"denied the plaintiff the benefits of the terms and conditions of employment like all other non-

Indian employees of the defendant in violation of 42 U.S.C. § 1981."  See Compl. ¶ 51.

Section 1981 does not provide a remedy for discrimination on the basis of national origin.

See Ohemeng v. Del. State Coll., 676 F. Supp. 65, 69 (D. Del. 1988) (citing Saint Francis Coll. v.

Al-Zhazraji, 481 U.S. 604, reh'g denied, 483 U.S. 1011 (1987)).  To the extent Plaintiff premises

his Section 1981 claim on national origin, he has failed to state a claim and summary judgment

will be granted to Defendants.[13]  See Ohemeng, 676 F. Supp. at 69.[14]

## 2.  Section 1985

Plaintiff next asserts that "the defendant through defendant Hermann during and

throughout their pretextual peer review process conspired to deny the plaintiff of his federal and

state law protected civil rights."  See Compl. ¶ 49.  Plaintiff further asserts that "defendant

---

[13]  To the extent Plaintiff intended the basis for his ADA claim to state a cause of action under Section 1981, his claim is also invalid because Section 1981 was intended to provide a remedy for race discrimination only.  See supra.

[14]  To the extent Plaintiff may have intended to premise his Section 1981 claim on racial discrimination, his Complaint would state a claim.  See Saint Francis Coll., 481 U.S. at 609; see also Banker v. Time Chem., Inc., 579 F. Supp. 1183, 1187 (N.D. Ill. 1983) ("In view of the interrelated nature of national origin, ethnic and racial discrimination [may] be found by the courts" in the context of Section 1981).  Claims of discrimination brought under Section 1981 are subject to a four-year statute of limitations.  See 28 U.S.C. 1658; Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004).  Under the four-year statute of limitations, Plaintiff would not be able to assert claims of Section 1981 racial discrimination based on events occurring prior to April 3, 2003.

Because analysis of discrimination under Section 1981 litigation tracks Title VII and PHRA litigation, the Court would grant summary judgment to Defendant for the same reasons that the Court granted summary judgment on the Title VII and PHRA claims–namely, there is no evidence of discriminatory racial animus.  See Boyer, 2005 U.S. Dist. LEXIS at *16 n.6 (citing Younge v. St. Paul Fire & Marine Ins. Co., 2002 U.S. Dist. LEXIS 12293, at *13-14 (E.D. Pa. Jun. 20, 2002) (McDonnell Douglas framework)) and *42 n.17 (citing Weston v. Pa. Dep't of Corr., 251 F.3d 420, 425 n.3 (3d Cir. 2001) (hostile work environment)); James v. Allentown Bus. Sch., 2003 U.S. Dist. LEXIS 12046, *28 n.11 (E.D. Pa. Jun. 2, 2003).

AirTran conspired, agreed to, and permitted defendant Hermann to impose a humiliating, unlawful and unnecessary disability certification and unlawfully labeled and perceived the plaintiff as disabled in violation of 42 U.S.C. § 1985." See Compl. ¶ 50.

Section 1985(3) provides, in relevant part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Pennsylvania's two-year statute of limitations for personal injury actions applies to Section 1985(3) claims.  Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79-80 (3d Cir. 1989) ("Because [S]ection 1985(3) violations necessarily involve a conspiracy to deprive another of rights, privileges, and immunities, the underlying deprivations sound in tort."); Rose v. County of York, 2007 U.S. Dist. LEXIS 2864, 15-16 (E.D. Pa. Jan. 12, 2007).  Thus, any claim of conspiracy predicated on events occurring before April 3, 2005 are time-barred.  Because Plaintiff had already been terminated by the time the limitations period was tolled under Section 1985(3), his claim is untimely, the Court accordingly grants summary judgment to Defendants.

Even if Plaintiff's claim were not untimely, it would not survive summary judgment.  In order to succeed under Section 1985(3), a plaintiff must show: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus; (3) designed to deprive any person of the equal protection of the laws; (4) an act in furtherance of the conspiracy; and (5) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  See James, 2003 U.S. Dist. LEXIS at *28-29 (citing Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997)).

30

—

"It is basic in the law of conspiracy that you must have two persons or entities to have a

conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and

it is the general rule that the acts of the agent are acts of the corporation."  Id. at 30-31 (citing

Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952), cert. denied,

345 U.S. 925 (1953)).  Thus, for the purposes of 1985(3), a corporation cannot conspire with

itself, nor can it conspire with one of its officers if that officer is acting in an official (as opposed

to personal) capacity.  See id. at *31; see also Robison v. Canterbury Village, Inc., 848 F.2d 424,

431 (3d Cir. 1988); Udujih v. City of Phila., 513 F. Supp. 2d 350, 356 (E.D. Pa. 2007).  Thus, to

the extent Plaintiff claims that Defendants AirTran and Hermann, in her official capacity,

conspired to deprive him of his civil rights, summary judgment is properly granted to

Defendants.

Apparently recognizing that his conspiracy claim would not survive summary judgment

were he to allege that Ms. Hermann (or any other employee) was acting as an agent of AirTran in

conspiring to deprive him of his civil rights, Plaintiff contended at oral argument that he is also

bringing a conspiracy claim against Ms. Hermann in her individual capacity.[15]  See Tr. Oral Arg.

94.  Plaintiff argues, "let's assume that Hermann and AirTran say let's deny [Plaintiff's]

Pennsylvania Human Relations Act rights, then there is enough fact question to say they might

have conspired to punish him at the complaint about discrimination that is protected under the

---

[15]  At oral argument, Plaintiff also mentions Mr. Brophy with regard to his conspiracy
claim.  See Tr. Oral Arg. 88-89.  However, Mr. Brophy is not a named individual defendant in
this action, and henceforth may not be held liable in this lawsuit.  See James, 2003 U.S. Dist.
LEXIS, at *10.

Pennsylvania Human Relations Act."[16]  Id.

Disregarding the fact that 1985(3) addresses conspiracy to deprive an individual of his or her federal constitutional civil rights, see, e.g., Griffin v. Breckenridge, 403 U.S. 88 (1971), Plaintiff has presented no evidence of record to support his claim, beyond personal speculation about events that may or may not have happened.  Plaintiff must show facts that support the inference of an "invidiously discriminatory motive," and facts from which a "conspiratorial agreement between the defendants can be inferred."  See, e.g., Evans v. Chichester School District, 2008 U.S. Dist. LEXIS 1821, *28-29 (E.D. Pa. Jan. 10, 2008) (granting a motion to dismiss).  Such speculation on behalf of Plaintiff is insufficient to raise an issue of material fact for a jury.  Hence, were Plaintiff's 1985(3) claim not barred by the statute of limitations, he nonetheless fails to present sufficient evidence to survive summary judgment on his conspiracy claim.[17]

**3.   Section 1988**

In the Complaint, Plaintiff seemingly alleges a violation of Section 1988.  See Compl. Count III.  However, at oral argument, Plaintiff acknowledged that Section 1988 does not provide

---

[16]  During oral argument, the Court requested that Plaintiff supplement his pleadings with regard to his argument that Ms. Hermann conspired with AirTran in her individual capacity.  See Tr. Oral Arg. at 96.  On March 10, 2008, Plaintiff provided the Court with a supplemental brief. (Doc. No. 31.) In that brief, Plaintiff reiterated the argument he presented during the hearing, that Ms. Hermann could be held individually liable under the PHRA, and thus could be held individually liable under Section 1985(3).  See Pl.'s Supp. Res. 1-2.  Plaintiff did not provide the Court with any further evidence indicating that Ms. Hermann personally conspired with AirTran with his supplemental brief.

[17]  The Court declines to exercise its equitable power and find Plaintiff's conspiracy claim timely in a case such as this, where Plaintiff has failed to show sufficient facts to support a cognizable claim.  See Rose, 2007 U.S. Dist. LEXIS at *16.

an independent cause of action.  See Tr. Oral Arg. at 97; see also Chappelle v. Chase, 487 F.

Supp. 843, 851 (E.D. Pa. 1980) ("Section 1988 does not, by itself, create any federal cause of

action.").

        To the extent that Plaintiff's invocation of Section 1988 constitutes a request for

attorney's fees, it is denied, as the Court has awarded summary judgment against Plaintiff on all

claims.


**D.   COUNT IV: STATE LAW CLAIMS**

        In addition to his federal claims, Plaintiff brings numerous state law claims, including

defamation, invasion of privacy, breach of express and implied contract, tortious interference

with a business relationship, and intentional infliction of emotional distress.

        During oral argument, Plaintiff conceded his defamation and invasion of privacy claims

are barred by Pennsylvania's two-year statute of limitations for intentional torts, (Tr. Summ. J.

Oral Arg., 3/6/08, 49-50), and that his intentional infliction of emotional distress claim against

AirTran is barred by the Pennsylvania Worker's Compensation Statute, which provides the sole

remedy for all injuries arising out of employment, including intentional or negligent infliction of

emotional distress.  (See Tr. Oral Arg. at 59; see also Matczak v. Frankford Candy & Chocolate

Co., 163 F.2d 933 (3d Cir. 1997)).  Thus, the afore-mentioned claims are dismissed, and the

Court will address only Plaintiff's claim of intentional infliction of emotional distress against

Defendant Hermann individually.

        In his original complaint, Plaintiff alleged that an express and implied contract was

created by AirTran's employee handbook.  See Compl. Count IV.  However, at oral argument,

Plaintiff stated that he is pursuing his breach of contract claim on the theory of implied contract only.[18]  (See Tr. Oral Arg. at 50:23-25, 53:11-13 ("I am not saying that there is an actual written contract, I am saying there is an implied contract."), and 56:13-15 (Court: "So, it is an implied contract you are pursuing here?" Plaintiff: "Yes, Your Honor.").)  Accordingly, the Court shall proceed as if Plaintiff claims only a breach of implied contract.

### 1.   Breach of Implied Contract

Plaintiff originally pled a breach of implied contract with regard to his termination on the theory that AirTran's Employee Handbook created a binding contract for the terms and conditions of his employment, and that AirTran violated those terms through their administration of the peer review process after Plaintiff's original termination in August 2004, and through their subsequent discharge of Plaintiff in February 2005.  See Compl. Count IV.

AirTran moves for summary judgment on Plaintiff's claim for breach of implied contract, arguing that Plaintiff had no contract with AirTran, implied or otherwise.  See Def.'s Br. 34-37. According to AirTran, it is well established under Pennsylvania law that an employee handbook cannot create an implied contract unless it contains a clear indication that the employer intended to overcome Pennsylvania's strong at-will employment presumption.  See id. at 36 (citing Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (Pa. Super.  1997)).

---

[18]  Were Plaintiff to have proceeded on the theory that the employee handbook created an express contract for the terms and conditions of his employment, his claim would have warranted no relief.  Plaintiff is unable to show that the AirTran communicated "unequivocal provisions" in the employee handbook showing that they intended to "renounce the principle of at-will employment," that such provisions were offered as binding terms of employment, and that Plaintiff accepted them. See Reilly v. Stroehmann Bros. Co., 532 A.2d 1212, 1214 (Pa. Super. 1987).

34

At oral argument, Plaintiff alleged that he has set forth the elements for breach of implied contract and refutes the contention that he is basing this claim on the mere issuance of the employee handbook.  Plaintiff's argument is difficult to understand, but the Court discerns that plaintiff asserts that "an implied contract [was] created by the peer review process. . .," <u>see</u> Tr. Oral Arg. 50:22-25, because when AirTran offered the peer review process to its employees via the "non-binding" handbook, "that became a binding agreement between the employer and the employee, if the employee availed themsel[f] [sic] of the things the employer promised as a part of the peer review system."  <u>See id.</u> 51:12-17.  Plaintiff seems to argue that because he availed himself of the peer review system after his first discharge in August 2004, AirTran retaliated against him by subsequently terminating him after reinstatement.

First, we note that corporate officers are not liable for a corporation's breach of an employment contract "unless the corporate officer assumes a personal obligation in the contract itself."  <u>White v. Ciber, Inc.</u>, 2007 U.S. Dist. LEXIS 84292, at *18 (M.D. Pa. Nov. 14, 2007) (citing <u>Leslie v. Phila. 1976 Bicentennial Corp.</u>, 332 F. Supp. 83, 93 (E.D. Pa. 1971)).  Plaintiff's complaint and subsequent pleadings do not allege facts stating or suggesting that Ms. Hermann assumed a personal obligation with regard to Plaintiff's employment.  Thus, summary judgment is granted to the extent Plaintiff pursues a breach of contract claim against Ms. Hermann.

In Pennsylvania, an employment relationship is strongly presumed to be at-will, meaning that the employer retains the power to discharge an employee for good reason, or no reason at all. <u>White v. Ciber, Inc.</u>, 2007 U.S. Dist. LEXIS 84292, at *13 (M.D. Pa. Nov. 14, 2007) (citing <u>Veno v. Meredith</u>, 515 A.2d 571, 577 (Pa. Super. 1986)).  If the relationship was at-will, the employer's decision to terminate will stand.  <u>Veno</u>, 515 A.2d at 577.

35

In order to overcome the at-will presumption, the plaintiff bears the substantial burden of demonstrating one of the following: (1) an agreement that the employment relationship was to endure for a definite duration, <u>Middleton v. Phila. Elec. Co.</u>, 1997 Phila. Cty. Rptr. LEXIS 34, *43-45 (1997); <u>see also</u> <u>Murphy v. Publicker Indus., Inc.</u>, 1988 Phila. Cty. Rptr. LEXIS 27, *28 (1988) ("[T]he at-will presumption may only be rebutted by clear evidence that the parties contracted for a definite period."); (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception. <u>Consolmango v. Home Depot</u>, 2006 U.S. Dist. LEXIS 88332, *11 (W.D. Pa. Dec. 6, 2006) (citing <u>Luteran</u>, 688 A.2d at 214)); <u>see also</u> <u>Robertson v. Atl. Richfield Petroleum</u>, 537 A.2d 814 (Pa. Super. 1987).  "In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can show clearly that he and the employer intended to form a contract." <u>Di Bonaventura v. Consolidated Rail Corp.</u>, 539 A.2d 865, 868 (Pa. Super. 1988).

Considering all the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has not overcome the presumption of at-will employment.  The Supreme Court of Pennsylvania stressed in <u>Luteran</u> that when "alleging that an employee handbook created an implied contract, the handbook must contain a clear indication that the employer intended to overcome the at-will presumption." <u>Consolmango</u>, 2006 U.S. Dist. LEXIS at *11.  To the contrary, AirTran's Employee Handbook (Def.'s Ex. Z) states, "[t]his Handbook is not a contract of employment.  It does not in any way guarantee employment for any specific term or length of time.  AirTran reserves the right to amend, change, discontinue, or replace the policies and guidelines in the Handbook at any time."  (Handbook, p. 8.)

36

Plaintiff does not allege that the employee handbook is the sole indicator of AirTran's intent to form a contract.  He has not alleged that (1) there was an agreement for a definite duration, (2) that there was an agreement that plaintiff would be terminated only for just cause, (3) that there was sufficient consideration to create an implied contract, or (4) a recognized public policy exception.  Rather, Plaintiff seemingly argues that because he availed himself of AirTran's peer review process set forth in the employee handbook after his first discharge, and because his peer review panel reinstated him, this action created an implied contract that Plaintiff would not be subsequently discharged.[19]

The Court finds that Plaintiff has presented no evidence that AirTran intended the outcomes of the peer review processes to become a legally binding contracts; therefore, Plaintiff cannot show an intent to contract with sufficient clarity to reach a jury.  Hence, the Court awards summary judgment to Defendants on Plaintiff's breach of implied contract claim.

### 2.   Intentional Infliction of Emotional Distress by Defendant Hermann

As Plaintiff rightly acknowledged during oral argument, the statute of limitations for intentional torts in Pennsylvania is two years.  See Tr. Oral Arg. at 49; 42 Pa. Cons. Stat. § 5524(7) (two-year statute of limitations for all non-specific tortious acts).  In addition to

---

[19]  Plaintiff's theory of implied contract in the present case is analogous to that in Consolmango v. Home Depot, where the plaintiff claimed that Home Depot's "clear communication and expected strict adherence to various corporate policies and rules, including rules concerning the reporting of various safety violations and progressive disciplinary states to be followed prior to the termination of an employee" and "communicated to employees via an employee handbook, disciplinary forms and/or posters in the employee areas" created an implied contract that such disciplinary steps would be adhered to before an employee could be terminated.  2006 U.S. Dist. LEXIS at *10.  The district court dismissed Plaintiff's claim, stating that "[u]nder Pennsylvania law, this is simply not enough."  Id. at *12.

defamation and invasion of privacy, intentional infliction of emotional distress is an intentional tort.  Thus, Plaintiff's claim is similarly barred by the two-year statute of limitations.[20]  See Bougher, 882 F.2d at 80; Stauffer v. Bell Atl., 2002 U.S. Dist. LEXIS 25718, at *15 (E.D. Pa. Feb. 20, 2002) (citing Fala v. Perrier Croup of Am., 2000 U.S. Dist. LEXIS 7218 (E.D. Pa. May 25, 2000)).

Even if Plaintiff's claim against Ms. Hermann were not time-barred, it would fail.  In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that the alleged conduct was so extreme and outrageous as to cause plaintiff emotional distress. Bougher, 882 F.2d at 80 (citing Williams v. Guzardi, 875F.2d 46, 52 (3d Cir. 1989); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc).  Pennsylvania also requires competent medical evidence to support a claim of alleged intentional infliction of emotional distress.  Bougher, 882 F.2d at 80 (citing Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987)).  None of the actions Ms. Hermann allegedly performed fit the legal definition of "extreme and outrageous[21]," nor has Plaintiff come forward with any medical evidence to support his claim of emotional distress.

For the afore-mentioned reasons, summary judgment with regard to Plaintiff's claim of

---

[20]  As with Plaintiff's Title VII and ADA claims, Plaintiff's claim for intentional infliction of emotional distress is similarly ineligible for equitable tolling.

[21]  To be liable, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  See Smith-Cook v. Nat. R.R. Passenger Corp., 2005 U.S. Dist. LEXIS 27297, *33 n.16. (E.D. Pa. Nov. 10, 2005).  "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."  Id. (citing Cox v. Keystone Carbon Co., 861 F.2d 390, at 395 (3d Cir. 1988)).

intentional infliction of emotional distress is granted.

## E.   COUNT V: DEFENDANT HERMANN'S INDIVIDUAL LIABILITY UNDER THE PHRA

Count V of the Complaint alleges violations of the PHRA.  The Court has previously awarded summary judgment to AirTran with regard to the PHRA in our discussion of Plaintiff's Title VII and ADA claims.  As previously discussed, Title VII and the ADA do not permit individual liability on the part of employees of an organization.  See supra ns. 2, 8.  However, Plaintiff seeks to hold Ms. Hermann individually liable for national origin and disability discrimination under the PHRA.  See Compl. Count V; see also Tr. Oral Arg. 98-101.

As previously discussed, the PHRA's statute of limitations bars Plaintiff from raising any claims based on events occurring before October 14, 2004.  Hence, Plaintiff may only raise claims related to his February 2005 termination with regard to Ms. Hermann.[22]

As a blanket matter, individuals may not be held liable under the PHRA for disability discrimination.  See Clinkscales, 2007 U.S. Dist. LEXIS, at *24 (citing Dici v. Pennsylvania, 91, F.3d 542, 552 (3d Cir. 1996)).  Thus, summary judgment is granted to Defendant Hermann with regard to Plaintiff's disability claim under the PHRA.

Individual liability under the PHRA is only permitted under Section 955(e), which forbids "any person, employer, employment agency, labor organization, or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory

---

[22]  Plaintiff's reinstatement via the peer review process occurred on October 22, 2004, which is just within the limitations period.  However, reinstatement is not an adverse employment action.  See Sarko, 2004 U.S. Dist. LEXIS at *8.  Therefore, Plaintiff may not rely on his reinstatement to establish retaliation, which requires an employer to have taken adverse employment action, see Shahin, 2006 U.S. Dist. LEXIS at *52, under the PHRA.

practice."  See 43 Pa. Cons. Stat. § 955(e); see also Clinkscales, 2007 U.S. Dist. LEXIS, at *24.

Supervisory employees may be held liable under Section 955(e) "on the theory that only

supervisors can share the discriminatory purpose and intent of the employer that is required for

aiding and abetting."  Holocheck v. Luzerne County Head Start, 385 F. Supp. 2d 491, 497 (M.D.

Pa. 2005) (citing Bacone v. Phila. Hous. Auth., 2001 U.S. Dist. LEXIS 9081 (E.D. Pa. June 27,

2001)).  As a result, "an individual supervisory employee can be held liable under an aiding and

abetting/accomplice theory . . . for her own act of discrimination or for her failure to take action

to prevent further discrimination by an employee under supervision."

        In order to state a claim for individual liability under the PHRA, Plaintiff must allege that

Ms. Hermann "aided and abetted" AirTran in retaliating or otherwise discriminating against him

with regard to his February 2005 termination.  Because Ms. Hermann resigned from AirTran

over a month prior to Plaintiff's final termination, it is difficult to see how Plaintiff can make out

such a claim.  In order to survive summary judgment, Plaintiff must present sufficient facts to

show that a question of material fact exists with regard to Ms. Hermann's involvement.  Plaintiff

has wholly failed to present such facts, but instead presents only his own blank speculation that

Ms. Hermann was somehow nefariously involved in his termination.  As a result, summary

judgment is properly awarded to Ms. Hermann under the PHRA.[23]

---

[23]  In support of her motion for summary judgment, Defendant argues that Plaintiff failed
to exhaust his administrative remedies with regard to his PHRA claim against Ms. Hermann
because he failed to name her as a defendant in his administrative complaint, and failed to serve
her with his PCHR Complaint.  See Def. Br. 41-45.  While the Court tends to agree, see
McQuaid v. Act Ret. Communities - Southhampton Estates, et al., 2005 U.S. Dist. LEXIS 18565,
at *7-8 (E.D. Pa. Aug. 8, 2005), we will not address this procedural argument because Plaintiff's
claim, to the extent he states one, is flawed on its merits.

IV.   <u>CONCLUSION</u>

After reviewing the facts in the light most favorable to the Plaintiff, the Court finds that, for the afore-mentioned reasons,  Plaintiff has failed to raise a question of material fact with regard to each of his claims.  Hence, the Court properly awards summary judgment to Defendants AirTran and Kathleen Hermann on all counts.  Judgment will be entered in favor of Defendants and against Plaintiff.

The Court's Order follows.